UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 23-22034-CIV-MORENO

JAVIER GOMEZ,

      Plaintiff,

vs.

PUBLIC HEALTH TRUST OF MIAMI-
DADE COUNTY, FL d/b/a JACKSON
MEMORIAL HOSPITAL a/k/a JACKSON
HEALTH SYSTEM,

      Defendants.
_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Javier Gomez sued his employer, the Public Health Trust, d/b/a Jackson Memorial Hospital alleging violations of the Family and Medical Leave Act and Florida's Workers' Compensation Law. The Public Health Trust responds that Gomez did not report to work for his scheduled shifts on April 6, 7, and 10, 2023, and failed to notify any supervisor of the reason for his absence. The transcript of Plaintiff's deposition taken on September 18, 2023, clearly indicates that Gomez did not apply for Family and Medical Leave related to his knee pain on April 5, 2023. *See* Plaintiff's Depo. at 79-81. The Defendant employer accepted Gomez's resignation due to job abandonment. Therefore, summary judgment is appropriate in favor of the Public Health Trust on Counts 1 and 2. The Court also finds that summary judgment is appropriate on the Plaintiff's claim for coercion under Florida Statute § 440.205 as Plaintiff does not respond to the motion for summary judgment on this claim and the Court finds that no reasonable person would be dissuaded from making a workers' compensation claim under the circumstances of this case. Finally, the Florida state claim for retaliation under the workers'

compensation law, § 440.205, is dismissed without prejudice with leave to refile, if appropriate, in state court.

THIS CAUSE came before the Court upon Defendant's Motion for Summary Judgment **(D.E. 19)**, filed on **October 26, 2023**.

THE COURT has considered the motion, the response, pertinent portions of the record, and being otherwise fully advised in the premises, it is

**ADJUDGED** that the motion for summary judgment is GRANTED as set forth in this order. It is also

**ADJUDGED** that all other pending motions are DENIED as moot.

## I.       Background

Plaintiff, Javier Gomez, began working for the Defendant Public Health Trust, d/b/a/ Jackson Health System on March 15, 2021. Jacqueline Edmondson, Jay Cruz, and Manuel Ortiz supervised Gomez throughout his employment at Jackson Behavioral Health Hospital, the location where Gomez worked as part of the cleaning staff. Edmondson was his direct supervisor on April 12, 2023 – Gomez's last official day as an employee.

Like all employees, Gomez received an employee handbook with the Public Health Trust's current policies, basic information about benefits and services for employees, and the rules of employment. The Employee Handbook advised Gomez of basic procedures to follow when an injury or illness occurred, including the types of leave available to him. Gomez attested to receiving the Employee Handbook, agreed to abide by all the employer's policies and procedures, and acknowledged that he understood the materials provided in the handbook.

Gomez sustained two work-related injuries during his employment with Defendant. After both accidents, Gomez applied for and received compensation and medical care via the

Workers' Compensation Law. Plaintiff's Depo. at 63, 66. Gomez submitted his first request for Family and Medical Leave on March 14, 2022. This request was denied because Gomez did not meet the twelve-month eligibility criteria. He resubmitted the request on March 15, 2022, which request was approved by the Matrix Absence Management System. Gomez submitted a third request for Family and Medical Leave on April 8, 2022. This request was denied due to his failure to provide proper documentation. Gomez submitted a fourth request for leave on July 11, 2022, and this request was also denied due to failure to provide proper documentation to certify the leave. On October 23, 2022, Gomez submitted a fifth request for Family and Medical Leave and this request was approved. Overall, he applied for and received Family and Medical Leave two out of the five times he applied.

On April 5, 2023, Gomez was suffering from knee pain. He did not go to work as scheduled on April 6, 7, and 10, 2023. Plaintiff's Depo. at 79. Although he spoke to employees in the Workers' Compensation Unit, he did not advise his supervisor, Jacquelyn Edmondson, that he would not be going to work as scheduled. *See* Plaintiff's Depo. at 81 (Q: Did you ever call [or] text your supervisor and let them know that your were not going to come in for your regularly scheduled shift? A. No). The Public Health Trust's Personal Leave Policy requires employees notify their managers of their need for leave. Rather, Gomez advised his supervisor of his need to go to urgent care. Gomez also testified that he did not submit an application for Family and Medical Leave due to his knee pain on April 5, 2023. *Id.* (Q: Did you submit an application for FMLA leave related to your knee pain on April 5, 2023? A. No).

On April 12, 2023, the Defendant applied its Abandonment of Position policy No. 310 to find Gomez had resigned. The policy states that "Unauthorized absences from work for a period of three (3) consecutively scheduled workdays may be considered abandonment of position by

3

an employee; such employee shall be considered to have resigned." Mr. Jay Cruz, an Administrator at Jackson Behavioral Health, sent Gomez a letter to that effect. That letter provides an appeal process and there is no record evidence that Gomez employed that process. Mr. Cruz also testified that Gomez's supervisors reached out to him to determine the reason for his absences on April 6, 7, and 10, 2023. After his resignation due to job abandonment, Plaintiff made a sixth request on April 19, 2023 for retroactive Family and Medical Leave. The Public Health Trust denied that request because Plaintiff was already found to have abandoned the job pursuant to the Trust's policies.

Plaintiff contends that Defendant's Workers' Compensation unit, which is run by a third-party agent called Corvel Corporation, authorized his need for surgery for his April 5, 2023 knee pain. Plaintiff also contends that he provided a Health Insurance Portability and Accountability Act (HIPAA) authorization for the Workers' Compensation division to provide information to his employer. The authorization form, however, is incomplete and does not check any boxes authorizing the release of medical information. *See* ECF 31-6. Because the form is facially incomplete, it does not allow a third-party to disclose medical information. The record also establishes Corvel does not request leave for an employee with a supervisor or communicate with the supervisor regarding an employee's need for medical leave.

Gomez also cites an email exchange between Defendant's Human Resources Director Mr. Cullemark and a Labor Relations/Human Resources Specialist Ms. Crespo where they discuss Plaintiff's employment on April 11-12, 2023. In that exchange, Mr. Cullemark indicates that because Plaintiff did not show up for work, that act constitutes job abandonment under the policy. Ms. Crespo offered to contact Gomez, and Plaintiff told her on April 12, 2023, of his need for surgery. She advised him to apply for Family and Medical Leave.

4

Finally, Gomez testified that his supervisor, Edmondson, spoke poorly to him after his work-related incidents. It is undisputed that Gomez only speaks Spanish and Edmondson speaks English. As such, Gomez testified that he was unaware of what Edmondson was saying to him. Yet, Gomez testified that he was able to make repeated claims for workers' compensation benefits and Family and Medical Leave. In fact, other than one instance where a workers' compensation claim was denied and then later granted, Gomez testified that he was never denied any other benefits related to his work injuries.

## II. Legal Standard

Fed. R. Civ. P. 56 provides, "summary judgment is appropriate where there 'is no genuine issue as to any material fact' and the moving party is 'entitled to judgment as a matter of law.'" *See Alabama v. N. Carolina*, 130 S. Ct. 2295, 2308 (2010) (quoting Fed. R. Civ. P. 56(a)). The existence of some factual disputes between litigants will not defeat an otherwise properly ground motion for summary judgment; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (emphasis added). Mere "metaphysical doubt as to the material facts" will not suffice. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251 (1986). The moving party has the burden of showing the absence of a genuine issue as to any material fact, and in deciding whether the movant has met this burden the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). "If reasonable minds could

5

differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992).

### III. Legal Analysis

*A. Family and Medical Leave Act Interference Claim*

To recover on a Family and Medical Leave Act interference claim, Plaintiff must satisfy three elements: (1) he must first show he was entitled to a benefit under the Act; (2) he must then show that his employer denied the benefit; and (3) he must finally "demonstrate harm, or prejudice, resulting from the employers' interference with [his] exercise (or attempted exercise) of an FMLA benefit." *Graves v. Brandstar, Inc.*, 67 F.4th 1117, 1121 (11th Cir. 2023) (citing *White v. Beltram Edge Tool Supply, Inc.*, 789 F.3d 1188, 1191 (11th Cir. 2015)). The record evidence establishes, by Plaintiff's own testimony, that he did not request Family and Medical Leave Act for his April 5, 2023 knee injury. He did not request that leave until April 19, 2023 after he was already found to have abandoned his job. There is also no dispute that Plaintiff had applied for Family and Medical Leave Act on two prior occasions and the Public Health Trust had granted those requests.

*1. Entitlement to an FMLA Benefit*

To be entitled to an FMLA benefit, Plaintiff must demonstrate that he "sought leave for a qualifying reason and that []he provided notice meeting certain criteria." *Ramji v. Hops. Housekeeping Sys., LLC*, 992 F.3d 1233, 1242 (11th Cir. 2021). Plaintiff argues that he put the Public Health Trust on notice that his absence was potentially qualifying under the Family and Medical Leave Act by seeking treatment at Defendant's medical facility for his April 5, 2023 knee pain, by being approved by a third-party workers' compensation unit for surgery, and by advising his supervisor that he was going to urgent care. These instances fall short of the

required notice.

The Court finds that seeking treatment at Defendant's medical facility is insufficient to provide notice to the Defendant in its role as Plaintiff's employer. To support this position, Plaintiff provides the Court with an incomplete Health Insurance Portability and Accountability Act (HIPAA) authorization. (ECF 31-6). Even if the form was complete, it does not authorize the Defendant as a medical provider to advise Plaintiff's supervisors of his pending surgery. *See* 45 C.F.R. § 164.508(b)(2)(ii) – (c)(1) ("An authorization is not valid, if . . .[t]he authorization has not been filled out completely" if the authorization is missing "[a] description of the information to be used or disclosed that identifies the information in a specific and meaningful fashion."). Getting treatment at a facility operated by the Defendant, which is the County Hospital, is not sufficient to put Plaintiff's supervisors on notice that his absence from work qualified as Family and Medical Leave. Also, for the Defendant to have relied on an incomplete HIPAA authorization form to provide notice to the supervisors of Plaintiff's medical condition would have constituted a violation of that law by Defendant. *See Bailey v. City of Daytona Beach Shores*, 560 F. App'x 867, 869 (11th Cir. 2014) ("HIPAA prohibits the use and disclosure of personal health information in employment-related decisions."). Finally, the Family and Medical Leave Act does not "require employers to play Sherlock Holmes, scanning en employee's work history for clues as to the undisclosed, true reason for an employee's absence." *See de la Rama v. Ill. Dep't. of Hum. Servs.*, 541 F.3d 681, 687 (7th Cir. 2008) (finding that an employer's knowledge that an employee went to emergency room and then began calling in sick did not suffice as sufficient notice that the employee was suffering from a condition qualifying for leave under the Family and Medical Leave Act). In this case, Plaintiff cannot establish notice simply because he got treatment in one of Defendant's facilities, especially considering that his HIPAA

authorization specifically did not allow for disclosure of his personal medical information.

To establish notice, Plaintiff also argues that Defendant's Workers' Compensation administrator, a third-party, approved the surgery. Therefore, he argues the Public Health Trust was on notice of the qualifying condition. Gomez states that he was approved for surgery on March 24, 2023, and the surgery was originally scheduled for April 11, 2023. 29 U.S.C. § 2612(e)(2) requires an employee who needs *foreseeable* leave for a planned medical treatment to "make a reasonable effort to schedule the treatment so as not to disrupt unduly the operations of the employer . . .and . . . if the date of the treatment requires leave to begin in less than 30 days, the employee shall provide such notice as is practicable." That the Workers' Compensation Administrator approved the surgery is insufficient to satisfy the notice requirement under the Act. Moreover, Plaintiff cannot be considered incapacitated when he was authorized for surgery on March 24, 2023 and requested to go to urgent care on April 5, 2023. ECF 31-18.

The only direct contact in the record is that on April 5, 2023, Gomez advised his supervisors that he needed to go to urgent care. Regulations establish that "calling in sick" without providing more information will not be considered sufficient notice to trigger an employer's obligations under the Family and Medical Leave Act. *See* 29 C.F.R. § 825.303(b). Plaintiff's testimony establishes that he did not request Family and Medical Leave for his April 5, 2023 knee pain and in fact, he did not even call in sick on April 6, 7, and 10, 2023. The Defendant's Personal Leave Policy requires employees notify their manager of their need for leave. *See* 29 C.F.R. § 825.303(c) (requiring compliance with an employer's leave requirement when the need for leave is foreseeable). Asking to go to urgent care is simply not enough to put Public Health Trust on notice of a need for leave, nor does it constitute a request for Family and Medical Leave. Accordingly, Plaintiff fails to show that he was entitled to leave because he

8

cannot show that he put the Defendant on adequate notice.

*2. Denial of the Benefit*

Even if this Court were to find there is an issue of material fact as to whether the Public Health Trust was on notice, the record does not establish that a request for leave was denied. It is undisputed that the Public Health Trust did not deny a leave request in 2023. Rather than identify a denial of a request for FMLA leave, Plaintiff instead argues the Defendant improperly found he abandoned his job because he advised Ms. Crespo, a Labor Relations Specialist, of his need for leave. He cites to an email exchange between Mr. Cullemark, the Human Resources Director, and Ms. Crespo dated April 11, 2023. After Plaintiff failed to show for work for three days, Mr. Cullemark wrote to Ms. Crespo indicating that Plaintiff's failure to show up for work for three days constituted job abandonment. Ms. Crespo responded on April 12, 2023, saying she contacted the employee and advised him he needed to apply for FMLA leave. On April 12, 2023, the Public Health Trust, through its Administrator of Operations Pascual Jay Cruz, issued the letter accepting Gomez's resignation due to job abandonment. It was not until April 19, 2023 that Plaintiff requested leave. Mr. Cruz indicated in his declaration that pursuant to the Public Health Trust's Leave Policy number 319, it is the employee's responsibility to advise the employer of all leaves of absences in writing. Mr. Cruz testified that Gomez was on light duty at the time of his knee pain on April 5, 2023. He added that Gomez was scheduled to be at work on April 6, 7, and 10, 2023, and during those days, Gomez's supervisors reached out to him by phone and text message to determine why Gomez was not showing up for his shifts. Gomez's supervisors advised that he did not respond to those text messages or calls on those dates. As such, Mr. Cruz sent an Acceptance of Resignation due to Job Abandonment Letter. That letter advised Gomez that he had the right to petition Employee/Labor Relations & Workforce Compliance within 21

9

calendar days of receipt of the Job Abandonment Letter for review of the facts regarding his resignation. The record does not establish that Gomez petitioned for a review of his resignation. Given these facts, the Court does not find that Gomez was denied benefits. He neither formally petitioner for leave and was denied, and the letter of job abandonment was not a denial of leave but rather an application of the Defendant's policy.

Having found that the record evidence does not establish Plaintiff's entitlement to Family and Medical Leave because he failed to put the employer on notice nor does it establish denial of the right to Family and Medical Leave, the Court need not address the damages prong of the Plaintiff's interference claim. The Court grants summary judgment on this claim.

B.  Retaliation for Family and Medical Leave

Count 2 of the Complaint is a claim for retaliation under the Family and Medical Leave Act. To establish a prima facie case of FMLA retaliation, a plaintiff must establish that (1) he engaged in a statutorily protected activity; (2) he suffered an adverse employment decision; and (3) the decision was causally related to the protected activity. *Walker v. Elmore Cnty. Bd. of Educ.*, 379 F.3d 1249, 1252 (11th Cir. 2004). Gomez's claim for FMLA retaliation is subject to the burden shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801-05 (1973); *McAlpin v. Sneads*, 61 F.4th 916, 927 (11th Cir. 2023). In this case, Plaintiff cannot establish a *prima facie* case, but even if he did, the Public Health Trust has offered a legitimate reason for the adverse action and there is no evidence of pretext.

Plaintiff's own testimony belies that he engaged in a statutorily protected activity as he did not put in a request for Family and Medical Leave *before* he proceeded to be absent from the job. Indeed, he put in a request seven days after Mr. Cruz issued the job abandonment letter. *Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir. 2006) (holding that "in a retaliation case, when

an employer contemplates an adverse employment action *before* an employee engages in protected activity, temporal proximity between the protected activity and the subsequent adverse employment action does not suffice to show causation."). Mr. Cruz's declaration also establishes that he did not know that Plaintiff needed time off for knee pain and he was simply applying the Defendant's job abandonment policy due to Plaintiff's failure to come to work on April 6, 7, and 10, 2023. Therefore, Plaintiff cannot show that the decision to find Plaintiff abandoned the job was causally related to protected activity that occurred a week *after* the letter was issued. To the extent, Plaintiff attempts to establish that the decision was related to his prior requests for Family and Medical Leave in April 2021 and December 2022 due to work-related injuries, the length of time that had passed between those incidents and the decision to find he abandoned his job is too long to find a causal connection. *See Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (finding a "three to four month disparity between statutorily protected expression and the adverse employment action is not enough[,]" to establish a causal connection). Finally, Plaintiff argues that even though Mr. Cruz issued the job abandonment letter on April 12, 2023, it was Mr. Cullemark who had final approval and Mr. Cullemark knew Plaintiff had a medical issue. The job abandonment letter is signed by Mr. Cruz and though Labor Relations is copied on the letter, the letter does not require Mr. Cullemark's signature. Indeed, the letter provides a mechanism for Plaintiff to appeal the decision. Accordingly, even if the Court were to find the letter constitutes an adverse employment action , the Plaintiff cannot make a *prima facie* showing that he engaged in statutorily protected activity nor can he establish a causal connection between that activity and the decision.

Even assuming that Plaintiff can establish a *prima facie* case for retaliation, Defendant has articulated a legitimate non-retaliatory reason for the employment action. The legitimate

11

nondiscriminatory reason was that Gomez violated the Defendant's leave policy and abandoned his position when he failed to appear for work and failed to notify his supervisors of his need for leave. At this stage, the burden shifts back to Gomez to offer admissible evidence from which a reasonable jury could conclude that Defendant's legitimate non-retaliatory reason for the dismissal was a mere pretext for retaliation. *See McAlpin*, 61 F.4th at 932. Gomez would need to produce sufficient evidence from which a reasonable fact finder would conclude the employer's proffered reasons were not what actually motivated its conduct, or that the proffered reasons are not worthy of belief. *Schaaf v. Smithline Beecham Corp.*, 602 F.3d 1236, 1244 (11th Cir. 2010). There is no record evidence to find that the reasons for the Trust's decision were pretextual. Gomez, himself, admitted he failed to report to work as scheduled and failed to let his supervisors know as required by the Trust's policy.

    C. Workers' Compensation Coercion Claim

To support a claim for coercion, Plaintiff must show he suffered a materially adverse action that might have dissuaded a reasonable worker from engaging in protected activities. *See Juback v. Michaels Stores, Inc.*, 143 F. Supp. 3d 1195, 1206 (M.D. Fla. 2015). Gomez's complaint alleges that he was denied necessary treatment to support his claim for coercion under Flroida Statute § 440.205. The record, however, does not support this claim. Rather, it reflects that Gomez was twice approved for workers' compensation benefits. He testified that no one made him feel like he could not make a claim for workers' compensation benefits. The Public Health Trust also accommodated him by placing him on light duty. Plaintiff does not respond to Defendant's argument that summary judgment is appropriate on this Workers' Compensation Coercion claim because there is no evidence to show a reasonable worker would have been dissuaded from engaging in protected activities.

The Court agrees with Defendant that summary judgment is appropriate on this state law coercion claim.

DONE AND ORDERED in Chambers at Miami, Florida, this 5th of February 2024.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record